IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted on Briefs July 31, 2009

**DON L. WRIGHT**

**v.**

**COMFORT SYSTEMS, U.S.A., and WALKER-J-WALKER, INC.**

**Appeal from the Chancery Court for Shelby County**
**No. CH-03-0195-01      Walter L. Evans, Chancellor**

_____

**No. W2009-00383-COA-R3-CV - Filed December 14, 2009**

_____

This is a breach of contract case. When the plaintiff employee was hired as a department manager for the defendant employer, his employment contract provided that he would receive a bonus based on the net profit of the department. During the plaintiff's term of employment, he received bonus payments; however, the parties had disagreements about how the department's profit was calculated and thus about the amount of the bonus. After the plaintiff's employment was terminated, the employee filed this lawsuit against the employer, alleging that the employer breached the contract by failing to pay the proper bonus amounts. The employer denied the allegation and asserted a counterclaim for excess amounts allegedly paid to the employee. The trial court referred issues on the plaintiff's claim and the employer's counterclaim to a special master. After conducting a hearing, the special master found that neither party carried its burden of proof and recommended that both the complaint and the counterclaim be dismissed. After considering the employee's objection to the special master's report, the trial court adopted the special master's recommendations and dismissed the claims. The employee now appeals. We affirm, finding that there is material evidence to support the trial court's concurrence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Stephen R. Leffler, Memphis, Tennessee for the Plaintiff/Appellant Don L. Wright

David A. Velander, Louisville, Kentucky and Craig M. Beard, Memphis, Tennessee for the Defendant/Appellee Walker-J-Walker, Inc.

## OPINION

### FACTS AND PROCEEDINGS BELOW

Defendant/Appellee Walker-J-Walker, Inc. ("Walker") is engaged in the mechanical contracting industry in the Memphis, Tennessee area. Walker's contracting business involves both new construction and renovation. Its business is roughly divided into two main areas of focus: construction and service. Walker's service department handled maintenance and service of existing mechanical systems.

In March 1996, Plaintiff/Appellant Don L. Wright ("Wright") was hired as general manager of Walker's service department. As incentive to hire Wright, Walker agreed to pay Wright a base salary plus a bonus predicated on the net profit of the service department. At the time Wright was hired, Walker was owned by Lee Walker and John Walker.[1] The letter memorializing Wright's employment agreement stated that Wright's bonus would be "10% of pretax net margin of Service Department billing including service contracts. (Formula is Gross Margin less Service Department Direct Overhead, less G & A in meeting each year with Lee and John Walker)."

Problems with the calculation of Wright's bonus arose almost immediately, primarily stemming from the fact that Walker's accounting system commingled the financial information of both departments and produced financial statements for the corporation as a whole. As a result, Wright's bonus calculation was done, in part, manually. Generally, Walker's practice was that chief financial officer ("CFO") Kristie Hand[2] and director of human resources Tish Bartlett would first determine the gross margin from individual job reports produced by the accounting system. They would then compile a list of G&A expenses[3] for the entire company and manually allocate a portion of each expense to the service department for the purpose of calculating Wright's bonus. After the bonus calculation was completed for each period,[4] Wright would meet with Walker personnel to review it.[5] Disagreements often arose over particular items in the calculation, and some of the

---

[1] In August 1997, Lee Walker and John Walker sold their interest in Walker-J-Walker, Inc. to Comfort Systems, U.S.A., a publicly traded company, but the record indicates that they retained positions as president and vice-president, respectively.

[2] Throughout the record, Walker's CFO is referred to as "Kristie Hand" and "Kristy Hand." For the sake of consistency, this Opinion will use "Kristie Hand."

[3] "G&A" is a common accounting shorthand for the term "general administrative." Generally, it refers to indirect costs, such as electrical bills or office supplies, and is sometimes used interchangeably with "overhead."

[4] The parties initially agreed that the bonus calculation and payment would occur on an annual basis; however, after the first year, they agreed to determine the bonus on a quarterly basis.

[5] There is some dispute in the record as to who attended the meetings. Wright testified before the Special Master that in most instances only he, Lee Walker and John Walker attended the meetings. John Walker testified that in most instances he, Lee Walker, Tish Bartlett, Kristie Hand and Wright attended the meetings.

contested items would be revised. After revisions were made, Walker would issue Wright a check for the bonus, and Wright would accept it.

Despite Wright's acceptance of the bonus payments, he remained concerned about the calculation of the bonus, and in particular about the amount of G&A expenses allocated to the service department, as opposed to the construction department. On several occasions, he wrote letters to John and Lee Walker voicing his concerns. For example, after the first meeting to review the bonus calculation, Wright sent a letter to John and Lee Walker stating, "IT IS EVIDENT THAT ACCORDING TO THE ALLOCATION----THAT THE SERVICE CO. COVERS A LOT OF OVERHEAD FOR THE ENTIRE OPERATION." Although the disagreements continued, Wright also continued to accept the bonus checks as calculated. Wright's employment with Walker was terminated in July 2000.

On January 30, 2003, Wright filed a lawsuit against Defendants Comfort Systems, U.S.A. and Walker, alleging claims for breach of contract, intentional misrepresentation and conversion. The gist of Wright's complaint was that Walker, "in calculating the amount of Wright's bonus, attributed overhead items to the Service Department that were not legitimate overhead items of that department" and thereby artificially depressed Wright's bonus amount. After Wright took a voluntary non-suit as to Comfort Systems, U.S.A., Walker filed an answer denying Wright's allegations. Discovery ensued. Walker later filed a counterclaim against Wright for amounts allegedly paid to Wright in excess of the amount owed under the bonus provision of his employment contract.

On January 8, 2008, the trial court entered an order of reference to a special master. The issues referred to the Special Master[6] included whether Walker breached the terms of the employment contract with Wright, and if so, the amount of damages Wright was entitled to recover. The Special Master was also asked to determine whether Walker was entitled to recover on its counterclaim and, if so, how much. The Special Master was ordered to conduct an evidentiary hearing and submit to the trial court a written report containing findings of fact and conclusions of law, as well as a transcript of the proceedings.

On February 5 and 6, 2008, the Special Master conducted the evidentiary hearing. At the outset, the Special Master heard testimony from Plaintiff Wright, who testified at length about his concerns during his employment about the calculation of his bonus. He complained that he was not given access to supporting documentation of the calculation of Walker's overhead, and felt that a disproportionate amount of overhead was allocated to the service department, which reduced the amount of his bonus.

Walker's CFO, Kristie Hand, testified that she calculated Wright's bonus in accordance with the formula that was communicated to her by John Walker and Lee Walker. She said that the service department was not a "stand alone profit center" and that Walker's accounting system did not separate the construction and service areas. Hand outlined how she calculated the overhead and

---

[6]The Special Master was Attorney Clarence Halmon.

-3-

denied that a disproportionate amount of overhead was allocated to the service department. Walker's human resources director Tish Bartlett corroborated Hand's testimony.

John Walker testified about the bonus agreement entered into when Wright was hired, and the process of manually computing the figures to calculate Wright's bonus. He said that the same method was used each time to calculate Wright's bonus, and that Wright accepted his bonus check each time.

Wright presented the testimony of an expert witness, Andy Wilson ("Wilson"), a fraud investigator. Wilson testified that Walker's calculations of Wright's bonus were arbitrary and inconsistent, and that source documents utilized to determine overhead expenses for the service department were missing. Wilson opined that this was indicative of fraud. Wilson emphasized the necessity of source documents such as sales documents, job files, and invoices to verify the overhead and expense calculations. In the absence of supporting documentation, Wilson calculated the amount of bonus Wright was allegedly due by utilizing a calculation method that relied on a series of assumptions, designating an overhead amount based on a percentage of the service department's sales.

Walker proffered expert testimony by a certified financial auditor, Jeff Stallings ("Stallings"). Stallings stated that he had independently reviewed Walker's records, such as Walker's general ledger, but did not review source documents on expenses, such as bills for repairs. Stallings did not bring to the hearing records such as Walker's general ledger, but instead brought his work papers from reviewing them. After reviewing Walker's records, Stallings calculated Wright's bonus, and asserted that the bonus calculations that were done by Walker's employees conformed to the letter agreement outlining Wright's bonus arrangement. He did not find that a disproportionate amount of overhead had been allocated to Walker's service department. Stallings criticized Wilson's calculation of Wright's bonus, and in particular the assumptions underlying Wilson's calculations. Stallings offered no testimony to support Walker's counterclaim against Wright. At the conclusion of the hearing, the Special Master took the matter under advisement.

On July 17, 2008, the Special Master filed a 14–page report outlining and analyzing the evidence and setting forth his findings of fact and conclusions of law on both Wright's complaint and Walker's counterclaim. The Special Master observed that "[t]he question of breach is, to a certain extent, intertwined with the question of damages" because Wright's claim of breach of contract was based solely on the alleged underpayment of his bonus; therefore, he focused on the bonus calculations.

The Special Master's detailed report outlined the background and the parties' allegations, and summarized the testimony by each of the witnesses at the evidentiary hearing. He set out Hand's elaborate explanation of the manual assembly of information and the calculation of expenses utilized to determine Wright's bonus, as well as Wright's objections to specific portions of the expense calculation and allocation to the service department. The Special Master found "as a Finding of Fact that Neither Plaintiff [n]or Defendant produced 'support documentation' for line item[] costs in regards to the issue for calculating the bonus. Nor did any party explain why the documents for each line item cost[] were not produced."

The Special Master analyzed Wilson's testimony at length, noting that the methodology utilized by Wilson was necessitated by the fact that supporting documentation for overhead figures were not made available to him. The Special Master found specifically that Wilson's proposed method was "too speculative" to be used to calculate Wright's bonus. The Special Master also analyzed Stallings' testimony at length, finding his testimony credible insofar as he explained the procedures used to calculate Wright's bonus and his criticism of Wilson's method for determining the bonus. The Special Master found that Wilson's formula for calculating Wright's bonus did not comport with the formula agreed upon by the parties. Because Wright did not attempt to quantify his damages but instead relied upon Wilson's expert testimony, the Special Master found no credible evidence that Wright suffered any damages.

The Special Master concluded that Wright "was not persuasive on the issue of breach" and that any damages he suffered "cannot be determined correctly to a degree of specificity not bordering on speculation" in the absence of source documents on Walker's expenses. The Special Master likewise found that Walker's proof on its counterclaim was "speculative," and found no fraud by Walker. Finding that neither party had carried its burden of proof, the Special Master recommended that both Wright's claims and Walker's counterclaim be dismissed.

After the Special Master's report was filed, Wright filed an objection on the grounds that Walker either purposefully caused the destruction of the source documents on the company's expenses or purposefully withheld the source documents from Wright. Walker responded by arguing that Wright's objection was improper in that Wright never presented to the Special Master any evidence that Walker either was guilty of spoliation of evidence or that Walker intentionally failed to produce documents.[7] In an order entered January 20, 2009, the trial court overruled Wright's objections to the Special Master's report and adopted the recommendation of the Special Master. Thus, the trial court dismissed Wright's complaint and Walker's counterclaim. Wright now appeals.

### ISSUE ON APPEAL AND STANDARD OF REVIEW

On appeal, Wright seeks to frame the issue for review as "whether there was sufficient evidence in the record to prove the damages sustained by [Wright] as a result of the breach of Wright's employment contract with [Walker]."

---

[7]Although Wright argues on appeal that affirming the trial court's judgment "would reward Walker for successfully covering their tracks by sitting on documents they had an obligation to produce in response to discovery," no issue is raised on appeal on whether Walker was guilty of spoliation or the intentional withholding of evidence.

We note, however, that when there is a concurrent finding of a special master and a chancellor, our review is extremely limited. *See* T.C.A. § 27-1-113;[8] *Gammo v. Rolen*, 253 S.W.3d 169, 174 (Tenn. Ct. App. 2007).

> Where there has been a concurrent finding of the Special Master and Chancellor, this Court may not disturb the concurrent findings. A concurrent finding of a master and chancellor is conclusive on appeal, except where it is upon an issue not proper to be referred, where it is based on an error of law or a mixed question of fact and law, or where it is not supported by any material evidence. This standard of review is similar to our standard when reviewing a jury verdict; we must affirm if there is any material evidence to support the trial court's concurrence.

*Gammo*, 253 S.W.3d at 174 (quoting *In re Estate of Ladd*, 247 S.W.3d 628, 636 (Tenn. Ct. App. 2007)) (citations omitted). There is no allegation on appeal that the issues were not proper for referral to a special master. Thus, the issue presented to this Court on appeal can be only whether there was an error of law or on a mixed question of fact and law, or whether the findings were not supported by any material evidence.

### ANALYSIS

On appeal, Wright essentially argues that the Special Master and thus the trial court, erred in not crediting expert Wilson's testimony. Wright asserts that, because Walker failed to produce necessary source documents, in the absence of such documents, Wilson's methodology for calculating and allocating Walker's overheard, and thus Wright's bonus, was reasonable and should have been adopted.

The Special Master's finding that Wilson's method was "speculative" was an implicit determination that his expert testimony was not credible. This is neither a question of law nor a mixed question of fact and law; it is simply a factual finding by the Special Master, concurred in by the trial court. As such, it is conclusive on appeal. *See Gammo*, 253 S.W.3d at 174. Thus, we look only to whether there was any material evidence to support the trial court's concurrence in the recommendations of the Special Master. As outlined above, the Special Master was presented with ample evidence to support his findings of fact and conclusions of law. This evidence was available for the trial court by virtue of the Special Master's report and the transcript of the evidentiary hearing. From our careful review of the appellate record, we must conclude that there was material evidence to support the trial court's concurrence.

---

[8] The statute provides in pertinent part the following:

> Where there has been a concurrent finding of the master and chancellor, which under the principles now obtaining is binding on the appellate courts, the court of appeals shall not have the right to disturb such finding. . . .

T.C.A. § 27-1-113 (2000).

## CONCLUSION

The decision of the trial court is affirmed. The costs of this appeal are taxed to the Appellant Don L. Wright and his surety, for which execution may issue if necessary.

 

_____
HOLLY M. KIRBY, JUDGE